IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FIDELITY BANK,                                    :
    Plaintiff,                                  :
                                                :      CIVIL ACTION NO.
    v.                                          :      1:12-CV-4259-RWS
                                                :
CHARTIS SPECIALTY                                 :
INSURANCE COMPANY,                                :
    Defendant.                                  :

## ORDER

This matter is before the Court for consideration of the parties' competing motions for summary judgment. [Docs. 12, 23]. After careful consideration, this Court concludes that Defendant is entitled to judgment in its favor.

## Background

The factual background of this case is straightforward. Plaintiff Fidelity Bank is a bank that purchased a Management and Professional Liability for Financial Institutions policy from Defendant Chartis Specialty Insurance Company. Plaintiff was sued by its customers in a class action lawsuit in DeKalb County State Court. In simple terms, the complaint in the underlying action claimed that the fee that Plaintiff charged its customers for overdrafts amounted to a usurious interest charge in violation of Georgia law. According to the underlying complaint, when one of

Plaintiff's customers attempted to withdraw cash or make a purchase by check or debit card in an amount in excess of that customer's balance, Plaintiff would advance the funds to cover the purchase and charge a $29 fee regardless of the amount advanced. The underlying complaint raised four counts: Count I: Violation of Georgia's Civil Usury Laws, Count II: Violation of Georgia's Criminal Usury Laws, Count III: Conversion, and Count IV: Money Had and Received.[1]

Plaintiff notified Defendant about the suit, and Defendant agreed to provide funds to defend the suit but not to indemnify Plaintiff for any sums that Plaintiff would have to pay in a judgment or a settlement.  Plaintiff settled the underlying suit and instituted the instant action claiming that Defendant, under the terms of the insurance policy, has a duty to indemnify Plaintiff for the sums that it lost as a result of the suit.

According to the policy,

This policy shall pay the **Loss** of each and every **Insured** arising from a **Claim** first made against such **Insured** during the **Policy Period** or **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any **Wrongful Act** of the **Insured** in the

---

[1] Money had and received is a somewhat arcane common law doctrine that, according to the Georgia Court of Appeals, is based on the ancient writ of assumpsit and under which recovery is authorized "against one who holds unspecified sums of money of another which he ought in equity and good conscience to refund." Taylor v. Powertel, Inc., 551 S.E.2d 765, 770 (Ga. Ct. App. 2001).

rendering of or failure to render **Professional Services**. The **Insurer** shall, in accordance with Clause 4 of this **Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

[Doc. 12, Exh. A (hereinafter "Policy") at 5].

The words and phrases in bold type in the foregoing policy language are defined terms. There is no dispute that Plaintiff is an "Insured," that the underlying suit arose during the term of the policy, or that Plaintiff properly and timely notified Defendant about the suit.

The policy defines "Wrongful Act" as "any actual or alleged breach of duty, neglect, error, misstatement, omission or act by the Company." [Id. at 6]. "Professional Services" are defined as

> those services, including online banking services, of the Company as set forth in an endorsement to this policy by the Insurer, which services are permitted by law or regulation, to be rendered by an Insured pursuant to a written agreement with the customer or client as long as such service is rendered for or on behalf of a customer or client of the Company (i) in return for a fee, commission or other compensation ("Compensation"), or (ii) without Compensation as long as such non-compensated services are rendered in conjunction with services rendered for Compensation.

[Id.].

The policy also contains several exclusions. Relevant to this discussion, Exclusion (h) states that Defendant is not

> liable to make any payment for Loss in connection with any Claim made against any Insured . . . alleging, arising out of, based upon or

3

attributable to, directly or indirectly, any dispute involving fees, commissions or other charges for any Professional Service rendered or required to be rendered by the Insured, or that portion of any settlement or award representing an amount equal to such fees, commissions or other compensations; provided, however, that this exclusion shall not apply to Defense Costs incurred in connection with a Claim alleging a Wrongful Act;

[Id. at 7].

## Discussion

### Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990). In analyzing the motion, the Court views the facts in the light most favorable to the nonmoving party and makes all factual inferences in favor of that party. Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 918 (11th Cir. 1993); Rollins v. TechSouth, Inc, 833 F.2d 1525, 1529 (11th Cir. 1997). "The court must avoid weighing conflicting evidence or making credibility determinations." Hairston, at 919. "Where a reasonable fact finder may 'draw more than one inference from the

4

facts, and that inference creates a genuine issue of material fact, then the court should

refuse to grant summary judgment.'" Id. (quoting Barfield v. Brierton, 883 F.2d 923,

933-34 (11th Cir. 1989)).

### Georgia Insurance Law

> In Georgia, insurance is a matter of contract, and the parties to an
> insurance policy are bound by its plain and unambiguous terms. Thus,
> when faced with a conflict over coverage, a trial court must first
> determine, as a matter of law, whether the relevant policy language is
> ambiguous. A policy which is susceptible to two reasonable meanings is
> not ambiguous if the trial court can resolve the conflicting interpretations
> by applying the rules of contract construction. Where a term of a policy
> of insurance is susceptible to two or more reasonable constructions, and
> the resulting ambiguity cannot be resolved, the term will be strictly
> construed against the insurer as the drafter and in favor of the insured.
> If a policy exclusion is unambiguous, however, it must be given effect
> even if beneficial to the insurer and detrimental to the insured. We will
> not strain to extend coverage where none was contracted or intended.

Hays v. Georgia Farm Bureau Mut. Ins. Co., 722 S.E.2d 923, 925 - 926 (Ga. Ct. App.

2012) (citations, quotations, alterations and punctuation omitted).

### Discussion of the Parties' Arguments

Defendant argues that it is not obligated to indemnify Plaintiff for four reasons:

(1) Fidelity's decision to charge overdraft fees was a deliberate business
decision, not a "Wrongful Act," as defined in the Policy; (2) the
Underlying Action does not make allegations regarding Fidelity's
"Professional Services," instead taking issue with the amount of fees
charged; (3) the amounts that Fidelity paid to settle the Underlying

Action are uninsurable as a matter of law because they amount to restitution; and (4) the Policy excludes claims arising out of disputes over fees.

[Doc. 23 at 2].

This Court concludes that the third and fourth reasons set forth above are compelling. First, looking at the facts of the underlying dispute, the money at issue – the damages claimed by the underlying plaintiffs – was not money that Plaintiff lost as would be the case if Plaintiff had, for example, negligently negotiated forged checks. Rather, Plaintiff was deducting to its own use funds from its customers' accounts in a manner that was not legally authorized. As a result of the lawsuit, Plaintiff was required to return its customers' funds in the same manner that it would if Plaintiff had mistakenly deducted funds from a customer's account because of, for example, a computer error.

To require Defendant to pay restitution for amounts Plaintiff collected pursuant to illegal practices would result in a windfall to Plaintiff. If this Court were to require Defendant to indemnify Plaintiff under these facts, it would amount to a ruling that Plaintiff is free to collect fees and make profits from its customers through illegal conduct, and the insurer is on the hook when the customers sue while Plaintiff keeps the ill-gotten gains.

Although this Court could not locate Georgia case law that speaks to this issue, courts in several states have a rule that "one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired. Such orders do not award 'damages' as that term is used in insurance policies." Bank of the West v. Superior Court, 833 P.2d 545, 553 (Cal. 1992); see, e.g., Central Dauphin School District v. American Casualty Co., 426 A.2d 94 (Pa. 1981) (insurance company not required to cover a court-ordered refund of taxes which the insured school district collected through unlawful tax measure); Level 3 Comm., Inc. v. Fed. Ins. Co., 272 F.3d 908, 911 (7th Cir. 2001) (applying Illinois law) ("An insured incurs no loss within the meaning of the insurance contract by being compelled to return property that it had stolen, even if a more polite word than 'stolen' is used to characterize the claim for the property's return."); Granite State Ins. Co. v. Aamco Transmissions, Inc., 57 F.3d 316, 320 (3d Cir. 1995) ("We also point out that if 'unfair competition' includes coverage for a claim by a customer against an insured, the insured 'would simply shift the loss to its insurer and, in effect, retain the proceeds of its unlawful conduct.'"); Alanco Techs., Inc. v. Carolina Cas. Ins. Co., 2006 WL 1371633, at *4 (D. Ariz. 2006) (applying Arizona law) ("Because rescissory damages are uninsurable under the law, and defense costs are recoverable only for covered losses, Plaintiffs have suffered no loss under the policy."); Vigilant Ins. Co. v. Credit Suisse First Boston Corp., 10

A.D.3d 528 (N.Y. App. Div. 2004) ("As indicated, restitution of ill-gotten funds is not insurable under the law."); Nortex Oil & Gas Corp. v. Harbor Ins. Co., 456 S.W.2d 489, 494 (Tex. Civ. App. 1970) ("An insured . . . does not sustain a covered loss by restoring to its rightful owners that which the insured, having no right thereto, has inadvertently acquired. . . . The insurer did not contract to indemnify the insured for disgorging that to which it was not entitled in the first place.").

While this Court hesitates to purport to announce a "new" Georgia rule, it is clear that Exclusion (h) speaks to exactly this type of claim. As is noted above, Exclusion (h) excludes from indemnification (but not defense) disputes involving fees and commissions or, in other words, amounts that Plaintiff was accused of wrongfully or excessively charging its customers. This Court acknowledges that the underlying lawsuit referred to Plaintiff's overdraft fees as usurious interest and that Georgia case law indicates that overdraft fees constitute "interest" if the bank charges for advancing funds and renders no other service to its customer in exchange for the fee. See Synovus Bank v. Griner, 739 S.E.2d 504, 511 (Ga. Ct. App. 2013). However, the fact that Georgia law treats a fee as interest in a certain context does not mean that it cannot also be a fee.

This Court disagrees with Plaintiff's argument that Endorsement 2(13) of the policy, [see Policy at 13], provides coverage for disputes regarding interest. Rather,

that endorsement simply states that the servicing of loans, leases, and extensions of credit falls within the definition of "Professional Services." The underlying suit in this matter was not brought by the owner of a note asserting a claim regarding Plaintiff's improper servicing of a note. As such, Endorsement 2(13) has no application, and it obviously does not conflict with Exclusion (h).[2] In summary, this Court concludes that under the terms of Exclusion (h), Defendant has no duty to indemnify Plaintiff for the funds Plaintiff paid to its customers in settling the underlying action.

Briefly, in order to complete the record, this Court disagrees with Defendant's argument that Plaintiff's "decision to charge overdraft fees was a deliberate business decision, not a 'Wrongful Act,' as defined in the Policy." [Doc. 23 at 2]. The plain meaning of "Wrongful Act" as defined in the policy is very broad, including any "act" which causes a "Loss," and this Court agrees with Plaintiff that Plaintiff's improperly charging interest to its customers constituted an act that caused a Loss under the terms of the policy.

---

[2] This Court notes that the definition of "Loan Servicing" in the policy expressly excludes "Lending Acts." [Policy at 5-6]. Without delving too deeply into a discussion of the two defined terms, this Court reads this language to mean that Loan Servicing under the policy does not include the servicing of loans that Plaintiff owns. As a result, Endorsement 2(13) would not apply to the overdraft fees that are the subject of the underlying lawsuit even if this Court were to consider those fees to be purely interest charges.

This Court further disagrees with Defendant's argument that the underlying lawsuit "does not make allegations regarding Fidelity's 'Professional Services,' instead taking issue with the amount of fees charged." [Doc. 23 at 2]. Again, the plain meaning of the definition of "Professional Services" under the policy, set forth above, is quite broad, and this Court considers Plaintiff's practice of covering its customers' overdrafts to be a service "rendered for or on behalf of a customer or client of the Company [] in return for a fee, commission or other compensation." [Policy at 6]. Given the requirement under Georgia law that an insurance contract is to be "read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney," State Farm Mut. Auto. Ins. Co. v. Staton, 685 S.E.2d 263, 265 (Ga. 2009) (quotation and citation omitted), this Court concludes that a claim regarding a rendered service includes claims about the fee charged for that service. Having disagreed with Defendant's arguments regarding Loss, Wrongful Act, and Professional Services, this Court need not address Plaintiff's contention that Defendant waived those arguments.

## Conclusion

For the reasons discussed above,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment, [Doc. 23], is **GRANTED** and the Clerk is **DIRECTED** to enter judgment in Defendant's favor as to all of Plaintiff's claims. Plaintiff's motion for partial summary judgment, [Doc. 12], is **DENIED**.  The parties' motions regarding supplemental authority, [Docs. 30, 32], are **GRANTED** nunc pro tunc.

**IT IS SO ORDERED,** this *7th* day of *August*, 2013.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

11